United States District Court
District of Massachusetts

_____
                                   )
ELLEN ROTHMAN,                     )
        Plaintiff,                 )
                                   )
        v.                         )   Civil Action No.
                                   )   09-11473-NMG
OFFICE ENVIRONMENTS OF NEW         )
ENGLAND HEALTH & WELFARE BENEFIT   )
PLAN, and THE PRUDENTIAL           )
INSURANCE COMPANY OF AMERICA,      )
        Defendants.                )
_____)

# MEMORANDUM & ORDER

**GORTON, J.**

This case arises out of the denial of plaintiff Ellen Rothman's claim for long-term disability ("LTD") benefits by the defendants.

## I. Factual Background

Rothman was employed by Office Environments of New England, LLC ("Office Environments") to sell office furniture, audiovisual technology, architectural systems and expert services to business executives. In 2005, she earned close to $250,000. At all relevant times, Rothman was enrolled in Office Environment's Health & Welfare Benefit Plan ("the Plan"), which was intended to provide LTD benefits to qualified employees in the event of total disability and which is subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461.

On March 22, 2006, Rothman was hit and injured by a motor vehicle that ran a stop sign at an intersection. She suffered a concussion and was diagnosed by her healthcare providers, Dr. Steven Kanner and Dr. Marjorie Ross, with post-concussion syndrome and injuries to her arm, leg and neck. The Prudential Insurance Company of America ("Prudential") approved Rothman's short-term disability ("STD") benefits through June 18, 2006 but she was denied LTD benefits. Rothman's two internal appeals of the denial of LTD benefits were unsuccessful.

Rothman's medical records reveal that Dr. Ross, a neurologist, first diagnosed Rothman with post-concussion (or "post-concussive") syndrome on April 11, 2006. The symptoms of post-concussion syndrome that Rothman experienced included fatigue, headache, soreness, nausea, mood lability, memory loss, blurry vision and mental fogginess. In an assessment two days later, Dr. Kanner, Rothman's primary physician, wrote that Rothman had "persistent post-concussion syndrome, gradually improving" and reported that he encouraged Rothman to work part-time and to seek STD benefits.

On May 11, 2006, Dr. Kanner noted that Rothman still suffered from persistent post-concussion syndrome and was "not fit to work". Dr. Kanner stated that he was "quite confident that she will fully get back to normal but that may take until the summer time." At a June 1, 2006 appointment he noted that

she was "[r]eally not functional yet" and "will need to go on long-term disability quite appropriately in about two weeks." Rothman reported that she had gone on a vacation to Italy but spent the entire time resting instead of touring. On June 13, 2006, Dr. Ross noted that Rothman "continues to struggle with cognitive difficulties and mood lability due to post-concussive syndrome" but that mental status testing revealed that plaintiff was alert, oriented, attentive and had normal memory and fund of knowledge.

After Rothman's LTD benefits were denied, Drs. Kanner and Ross both opined that Rothman continued to suffer from post-concussion syndrome and was unable to return to work. On August 17, 2006, Dr. Ross noted that Rothman still suffered from post-concussion syndrome and stated that she was "unable to work at present" but no tests were run. On October 6, 2006, Dr. Kanner wrote to Prudential stating his position that Rothman was incapable of returning to work at that time given the demanding nature of her job. He did not identify any testing that he had done but explained that was because

> it was not going to make any direct impact on our treatment and also because it is time-consuming and costly.

It was his opinion that Rothman had a "clear right to her disability benefits".

On December 12, 2006, Dr. Kanner wrote to Rothman's employer

asserting that Rothman would be ready to try returning to work in January, although she was not "fully back to normal". Rothman returned to full-time work on January 22, 2007. On February 16, 2007, Dr. Kanner noted that Rothman was close to normal function.

On August 1, 2007, Dr, Kanner wrote to Prudential in support of Rothman's claim for LTD benefits. He reported that he had done a mental test on July 11, 2006 by talking with her about Sodoku and found that she was still impaired. Defendants point out, however, that there are no treatment notes in the record from July 11, 2006. Dr. Kanner emphasized in his August, 2007 letter that post-concussion syndrome is a known syndrome and Rothman's case was well-documented. He maintained that

> Ms. Rothman's cognitive impairment was perfectly consistent with other patients I have seen and attended to who had suffered similar substantial head injuries.

He concluded that Rothman was disabled and met Prudential's criteria for total disability for the entire calender year of 2006.

At Prudential's request, on January 12, 2007, Dr. Margaret O'Connor, a neurologist who is Board Certified in Clinical Neuropsychology, performed an independent neurological exam of Rothman for more than six hours. At that time, Rothman stated that she was "90% back to baseline in terms of energy and cognitive efficiency." The parties are in agreement, however, that Rothman did not qualify for LTD benefits after December 31,

2006.

Also at Prudential's request, on February 8, 2007, Dr. Steven Lee McIntire, a Diplomate in Psychiatry and Neurology, performed a review of Rothman's medical records and noted that there was no indication that she suffered head trauma or brain abnormalities. He concluded that there was no objective indication that Rothman was functionally or cognitively impaired after June 19, 2006. On August 20, 2007, Dr. McIntire did a second review of Rothman's medical records, including Dr. Kanner's letters dated December 12, 2006 and August 1, 2007. Dr. McIntire stated that "Sudoku is not a standard and accepted neurological test for making a cognitive diagnosis."

In an effort to obtain LTD benefits, Rothman brings this action alleging a violation of ERISA. She claims that the defendants' denial of LTD benefits was without adequate justification or supporting documentation and, therefore, was arbitrary and capricious. She seeks equitable relief as is required to obtain such benefits under 29 U.S.C. §§ 1132(a)(1), (a)(3) and (d)(2).

## II. <u>Procedural History</u>

Rothman filed her complaint in the Massachusetts Superior Court Department for Suffolk County on June 22, 2009. On September 4, 2009, the case was removed to federal court by the defendants. A scheduling conference was held on April 23, 2010

and the case was thereafter referred to Magistrate Judge Leo T. Sorokin for discovery proceedings. On December 28, 2010, the defendants filed a motion for summary judgment which Rothman timely opposed.

**III. <u>Legal Analysis</u>**

    **A.    Standard for Summary Judgment in ERISA Cases**

In ERISA cases, the district court's function resembles that of an appellate court:

> It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary.

<u>Leahy</u> v. <u>Raytheon Co.</u>, 315 F.3d 11, 18 (1st Cir. 2002). As such, the non-moving party does not enjoy the inferences in its favor that it would in an ordinary summary judgment analysis. <u>Orndorf</u> v. <u>Paul Revere Life Ins. Co.</u>, 404 F.3d 510, 517 (1st Cir. 2005).

The denial of benefits by plan administrators and fiduciaries is subject to <u>de novo</u> review unless the plan provides such decision-makers "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire & Rubber Co.</u> v. <u>Bruch</u>, 489 U.S. 101, 115 (1989). Where such discretionary authority exists, the Court must apply "a deferential arbitrary and capricious standard of judicial review." <u>Terry</u> v. <u>Bayer Corp.</u>, 145 F.3d 28, 37 (1st Cir. 1998).

Plaintiff does not dispute that the Plan grants Prudential discretionary authority and that the arbitrary and capricious

-6-

standard of review applies.  Under that standard, a plan administrator's decision will be upheld so long as it is "plausible in light of the record as a whole" and "supported by substantial evidence in the record."  Leahy, 315 F.3d at 17.  Substantial evidence means evidence that is "reasonably sufficient to support a conclusion."  Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004).  "[T]he existence of contradictory evidence does not, in itself, make the administrator's decision arbitrary."  Vlass v. Raytheon Emps. Disability Trust, 244 F.3d 27, 30 (1st Cir. 2001).

At the administrative level, the claimant bears the burden of demonstrating that he or she is disabled within the Plan's definition.  Morales-Alejandro v. Med. Card Sys., Inc., 486 F.3d 693, 700 (1st Cir. 2007).  The insurer is not required to give any particular weight to the claimant's treating physician.  Id.  The Plan provides that Rothman is disabled for the purposes of disability benefits when Prudential determines that

1) she is "not able to perform, for wage or profit, the material and substantial duties of [her] occupation";

2) after an initial period of total disability, she is not able to "perform for wage or for profit the material and substantial duties of any job for which [she is] reasonably fitted by [her] education, training and experience;

3) she is not working at any job for wage or profit; and

4) she is under the regular care of a doctor.

-7-

### B. Plaintiff's Request for Discovery

Rothman requests limited discovery regarding Prudential's conflict of interest. She claims that a conflict of interest arises from the fact that Prudential is the payor of benefits under the Plan and, as such, has a financial interest in terminating or denying benefits. Rothman claims that discovery is needed regarding Prudential's "conflict-ameliorating procedures". See Denmark v. Liberty Life Assurance Co. of Boston, 566 F.3d 1, 10 (1st Cir. 2009).

Indeed, where the plan administrator operates under a conflict of interest, that is a factor in determining whether he or she abused his or her discretion. Firestone, 489 U.S. at 115. The First Circuit Court of Appeals has held, however, that the fact that the insurance company both determines eligibility for and pays the benefits is not enough to alter the arbitrary and capricious standard of review. See Wright v. R.R. Donnelley & Sons Co. Grp. Benefits Plan, 402 F.3d 67, 75 (1st Cir. 2005); Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999). Because of that binding precedent, and because Rothman has claimed no other basis for a conflict, such as improper motive, the arbitrary and capricious standard of review applies here. In any event, the Court will deny Rothman's request because Magistrate Judge Sorokin thoroughly considered and reasonably denied Rothman's motion for discovery on this same basis on December 22,

2010 (Docket No. 18).

   **C.  Application**

   Defendants move for summary judgment, arguing that Prudential's decision was reasonable and supported by substantial evidence and, therefore, should be affirmed. See McLaughlin v. Prudential Ins. Co. of Am., 319 F. Supp. 2d 115, 125-26 (D. Mass. 2004).  Defendants argue that the objective evidence, gathered from examination and tests, shows that Rothman was functioning normally after June 18, 2006.  In addition, they maintain that there is no evidence of any physical or cognitive impairment other than mild memory loss at the time of the accident.  Plaintiff was able to travel to Italy and did not proffer evidence that she experienced any significant changes in her daily living activities.

   Rothman first responds that Prudential inappropriately relied on Dr. O'Connor's January 12, 2007 neuropsychological report because that report cannot attest to her capacity during the relevant period, i.e., from June 19, 2006 (when her STD benefits expired) through December 31, 2006 (when Dr. Kanner concluded that Rothman was fit to return to work).

   Second, Rothman highlights the inconsistency between Prudential's grant of STD benefits and its denial of LTD benefits based on its review of the exact same medical records.  Rothman's argument is meritorious because the doctor's reports do not

substantially change from the STD period to the LTD period. She exhibited similar symptoms and the award of STD was not based on any positive tests for cognitive or physical disability. Thus, it was inconsistent for Prudential to deny the LTD benefits based on identical symptoms and the lack of objective testing.

Third, Rothman points out that Prudential's definition of total disability is dependant upon the employee's job description. Leahy, 315 F.3d at 19. She argues that Dr. McIntire never considered whether she was capable of performing her particular job which, according to Rothman, is "extremely demanding" and cannot be undertaken part time. Finally, Rothman argues that neither Prudential nor Dr. McIntire supported the doctor's contention that the testing that was not performed is usually performed by doctors diagnosing concussions and treating post-concussion syndrome.

This case presents a close question. On one hand, Rothman bore the burden of showing that she was entitled to LTD benefits at the administrative level. Although Dr. Kanner advocated on her behalf, he did not perform a mental status examination or any objective testing to support his contention that Rothman deserved LTD benefits. There is no objective evidence of head trauma or injury or a cognitive or physical disability from the relevant time period. Moreover, Prudential is not required to defer to the opinion of the claimant's treating physician. See Morales-

Alejandro, 486 F.3d at 700. Finally, neither Dr. Kanner nor Dr. Ross explained specifically why Rothman's condition rendered her incapable of performing the specific tasks of her job.

On the other hand, both Dr. Kanner and Dr. Ross consistently diagnosed Rothman with a well-recognized disability and Dr. Kanner concluded that she was not fit to work through December, 2006. Moreover, Prudential's denial letters do not rebut plaintiff's claim that she was incapable of performing the specific duties of her occupation, which Rothman claims are very demanding and require

> intense concentration, multi-tasking, emotional and physical stamina, rapid processing of new information and integration of multiple facts in intense conversations with multiple people.

Neither party cites for the Court any analogous case law. In some cases where the denial of benefits was upheld, the plan administrator generally had more evidence than Prudential had here. For example, in Leahy v. Raytheon Co., the denial of benefits was upheld because it was based on

> statements and reports from the plaintiff's treating physicians, findings gleaned from an independent medical examination, the outcome of a functional capacity assessment, the conclusions of two retained physicians who reviewed the plaintiff's medical records at MetLife's behest, the timing of the plaintiff's claim, and the Social Security Administration's determination that the plaintiff was not disabled.

315 F.3d at 18.

In Vlass v. Raytheon Employees Disability Trust, the

claimant's primary treating physician opined that Vlass suffered from a total disability and was, consequently, unable to work. 244 F.3d at 30. Another physician, however, who had seen the claimant throughout his period of disability noted that he had improved and was capable of part-time work. Moreover, a vocational assessment was done and that doctor concluded that Vlass could work. Finally, Vlass was observed doing physical activity, which conflicted with his primary physician's opinion. Id. at 30-31. In light of that evidence, the First Circuit found that the administrator's denial of benefits was not arbitrary and capricious. Id. at 32.

Similarly, in Papadopoulos v. Hartford Life Insurance Co., 379 F. Supp. 2d 117, 127 (D. Mass. 2005), this Court held that the insurer's denial of LTD benefits was not arbitrary and capricious. The Court so found even though the denial conflicted with the opinions of the claimant's treating physicians because the decision was based on the opinions of two doctors, one of whom physically examined the plaintiff and reviewed plaintiff's medical records, and a videotape showing the claimant performing a range of daily activities.

Vlass and Papadopoulos are, however, distinguishable from the case at bar. Here, there is no videotape or other recorded observation of Rothman performing occupational activities and neither of the doctors that Prudential relied upon physically

examined Rothman during the relevant time period.

This case is also distinguishable from Lopes v. Metropolitan Life Insurance Company, in which the First Circuit upheld a denial of LTD benefits. 332 F.3d 1, 5 (1st Cir. 2003). In that case, both of the claimant's treating physicians were of the opinion that he was totally disabled, but a third doctor, hired by the defendant, who reviewed the claimant's record but did not physically examine him, found otherwise. The First Circuit upheld the denial of LTD benefits because one of the treating physicians had classified the claimant as "Class 4" disabled, meaning that he could engage in clerical or administrative, i.e., sedentary, activity. Id. at 5. Rothman's situation is distinguishable because neither of her doctors indicated that she was capable of performing the functions of her job and Dr. Kanner specifically stated that she could not in his October 6, 2006 letter.

In contrast, there are some parallels between this case and cases in which a plan administrator's decision was held to be arbitrary and capricious. For example, in Buffonge v. Prudential Insurance Co. of America, the First Circuit held that Prudential's denial of LTD benefits, under the same definition that applies to Rothman's case, was arbitrary and capricious. 426 F.3d 20, 31 (1st Cir. 2005). In that case, the claimant's primary treating physician and another physician both diagnosed

the claimant with severe back pain resulting in LTD and an inability to work. Prudential's denial was based on 1) a physical therapy summary that deemed the claimant pain-free, 2) the opinion of Prudential's doctor that the claimant could perform a desk job, 3) the fact that the employer had made physician-requested accommodations and 4) the opinion of a consultant who reviewed the claimant's record (as did Dr. McIntire in this case) but never examined the claimant. Id. at 25. The Court found that Prudential's decision was arbitrary because it had relied on chosen parts of the claimant's medical record but had ignored other parts that established an inability to work. Id. at 30-31.

In the case at bar, the Court agrees with Rothman that Prudential's reliance on Dr. O'Connor's January, 2007 examination was misplaced because it occurred after the period for which Rothman claims LTD benefits (June 18 through December 31, 2006). Without O'Connor's report, Prudential's decision was based entirely on Dr. McIntire's review of Rothman's medical record.

The Court concludes that Prudential's denial of LTD benefits in this case was arbitrary, as it was in Buffonge. See id. Although Prudential is not required to defer to the claimant's treating physicians, it cannot ignore their opinions or rely on isolated statements from the medical record. For example, Prudential mentions Rothman's June 13, 2006 visit with Dr. Kanner

but fails to report his opinion that she was unable to work at that time due to fatigue, headache and other symptoms of post-concussion syndrome. Furthermore, there is no mention in any of Prudential's denials of Dr. Ross's statements, in her August 17, 2006 report, that Rothman was "unable to work at present" and "continues to struggle with cognitive difficulties". Dr. Ross noted that Rothman was "still fatigued and has to rest every day." Dr. McIntire also ignored that evaluation completely in both of his reports.

Similarly, both Prudential and Dr. McIntire neglected to discuss Dr. Kanner's letter of October 6, 2006, which reiterated that Rothman was not fit to return to work at that time given the intensity of her job and the "substantial impairment of her high level neurocognitive functioning". Neither Prudential nor Dr. McIntire mentioned Dr. Kanner's opinion (expressed in his letter of August 1, 2007) that Rothman was totally disabled and unable to work for the entire calender year of 2006. Finally, Prudential's decisions do not describe the specific aspects of Rothman's job that she was ostensibly capable of performing.

In light of the selective extraction of statements from Rothman's medical record and the lack of substantial evidence supporting Prudential's denial of LTD benefits, the Court finds that Prudential's decision was arbitrary and capricious.

**D. Remedy**

Once the court determines that an administrator's decision was arbitrary and capricious, it can either remand the case to the administrator for a renewed evaluation or retroactively award benefits. Buffonge, 426 F.3d at 31. The First Circuit has taken a flexible approach and held that the Court has "considerable discretion" to determine a remedy. Cook v. Liberty Life Assurance Co., 320 F.3d 11, 24 (1st Cir. 2003). A retroactive award of benefits is an appropriate remedy where "there was no evidence in the record to support a termination or denial of benefits." Id. (internal quotations omitted). Remand is inappropriate where

> the difficulty is not that the administrative record was incomplete but that a denial of benefits based on the record was unreasonable.

Zervos v. Verizon N.Y. Inc., 277 F.3d 635, 648 (2d Cir. 2002).

Here, the record is complete and a remand to the Plan Administrator is unlikely to result in a different determination based on the same record. For that reason and because the Court concludes that Prudential's denial was unreasonable, a retroactive award of LTD benefits for the six-month period for which Rothman claims she is entitled to those benefits is the appropriate remedy. See Cook, 320 F.3d at 24 (upholding award of retroactive disability benefits and attorney's fees).

The Court also has the discretion to award reasonable

-16-

attorney's fees and costs of action to either party, pursuant to 29 U.S.C. § 1132(g)(1). Rothman deserves such an award in light of the Court's finding in her favor. See id. at 25.

**ORDER**

In accordance with the foregoing,

1) the defendants' motion for summary judgment (Docket No. 19) and plaintiff's request for discovery (Docket No. 24) are both **DENIED**; and

2) summary judgment is entered sua sponte in favor of the plaintiff.

The Court finds that the plaintiff is entitled to long-term disability benefits for the period claimed, i.e., from June 18 through December 31, 2006, plus interest, costs and reasonable attorney's fees. Plaintiff shall submit her memorandum in support of specific damages on or before June 3, 2011. Defendants shall submit their response on or before June 24, 2011.

**So ordered.**

/s/ Nathaniel M. Gorton  
Nathaniel M. Gorton  
United States District Judge

Dated May 10, 2011